The Supreme Court affirmed the decree of the Orphans’ Court on May 7, 1868, in the following opinion, per:
Read, J.
Robert Earp,. by his will, gave a legacy of $20,000 to his son, George Earp, Jr., and another of $10,000 to Samuel J. Randall, who, on the 1st January, 1849, entered into a copartnership agreeably to the directions of the testator. The capital of the firm was $30,000, and consisted of the two legacies above mentioned. The firm thus established continued in business until the 1st July, 1852, when it was dissolved, the dissolution (as between the partners,) to date back to January 1, 1852, Mr. S. J. Randall withdrew reluctantly, but Mr. George Earp, Jr., required it, and he took all the assets of the firm, and assumed all the liabilities.
Eelix Trainer, who had been Earp & Randall’s bookkeeper, after the dissolution of that firm became the partner of George Earp, Jr.,.the partnership commencing on the 1st July, 1852, but dating back to the 1st January, 1852,' under the firm name of George Earp, Jr. Mr. Earp was to contribute the difference between the assets and liabilities of the former firm of Earp & Randall, as capital to the firm of George Earp, Jr., and in consideration thereof he was to be paid interest on his capital, receive three-fourths of the profits and bear three-fourths of the losses. Mr. Trainer Avas to contribute services only, Avas to receive one-fourth of the profits and be subject to one-fourth of the losses, and Avas allowed to draAv out fifteen hundred dollars a year only, Avhile Mr. Earp could draw at his pleasure and Avithout limitation.
This firm continued until the 31st of October, 1854. Avhen it was dissolved on the requisition of Mr. Ear]), avIio, on the 5th *468 January, 1855, made an assignment of all his property, personal and partnership, to Frederick R. Backus, for the benefit of his creditors, and among the assets was all the partnership property of the late firm of Geo. Earp, Jr. Mr. Trainer not joining in the assignment.
The question naturally occurs what were the terms of the dissolution which gave Mr. Earp the entire control over the-assets of the partnership ?
Felix Trainer died in November, 1864, and his will was admitted to probate on the 28th of that month. Mr. Backus acted as assignee of Mr. Earp until about the 3d of May, 1862, when lie resigned, and Robert E. Randall, Esq., was appointed in his place.
In answer to the question as to the terms of dissolution, is produced a paper dated October 31, 1854, which was found in a bundle of papers, which Mr. Trainer told his sister were very valuable to him, and were left in her keeping when he was absent from the city, and that when her brother went to Gettysburg, in 1863, he put the bundle of papers (containing this paper) in her case, and they remained in her custody, locked up with her own private papers, until after his death. She testified that this paper was in her handwriting, that she was in the habit of copying for her brother, and that she recollected copying the paper in controversy, that she did so at her brother’s request, while they were'living in Washington street, from which thejr removed in May, 1855.
Another witness testified he found this paper after Trainer’s death, carefully tied up in a bundle of papers at Trainer’s former residence, and that the paper was in the handwriting of Tárese Trainer, a sister of Felix Trainer.
“Mr. Robb called Mr. Leedom, who witnessed the paper dated November 1, 1854, and who is put down as a witness upon the paper in question, Mr. Leedom swears to having been called upon by Eai-p and Trainer, and he thinks'about the same time, to witness two distinct papers one dated November-1, 1854, and another paper which he thought related to the dissolution of the firm. IJpon the paper in question being read to this witness he *469 .-said that-to the best of his recollection it was substantially the same as the paper he signed as a witness.”
Mr. Robb had previously “called upon Mr. Earp to produce "the- original articles of dissolution of the firm of George Earp, Jr., under date of October 31, 1854, and upon Mr. Earp’s replying that he. could not find any such paper, and that he had no recollection of any such paper having been executed, Mr. Robb produced the paper in question as a copy of an original paper, that had either been exclusively in Mr. Earp’s possession and control •or if Trainer had a duplicate copy, his copy had been lost, and promising to follow his offer with the proper proofs,” which we Rave given above.
The auditor admitted the paper in evidence as a copy of an •original paper executed by Earp and Trainer, but which could not be found.
It was clearly proved by a subscribing witness that a paper or •deed had been executed by Earp and Trainer, relating to the dissolution of the firm of George Earp, Jr, The original is denied by Mr. Earp to be in his possession, and then a copy made by the sister of Trainer of such a paper, made at his request, is produced from her custody, and upon this copy appear the names of the same witnesses as those to the paper of the first November, 1854, and one of these witnesses, upon the copy being ■read to him, said, that to the best of his recollection it was substantially the same as the paper he signed as a witness.
This brings the case clearly within the rule as expressed in •Greenleaf’s Evidence, S. 558, and we think the auditor was right in admitting it. in'evidence and holding it to be a faithful ■copy of an original instrument signed and executed by Earp and 'Trainer.
This deed of dissolution expressed the. terms upon which it was made. Earp took the stock and fixtures of the firm at their cost value and assumed “the payment of all debts or liabilities of said firm now due or to become due, releasing and guaranteeing said Felix Trainer from all liability or responsibility whatever by reason thereof, said Earp to have exclusive power to make settlements of the accounts of the firm, and to collect in ¡the name of the firm all debts now due to the said firm by suit *470 at law or otherwise, and on final settlement between them the profits, if any, after payment of all said debts and liabilities were to be divided as follows: 'the said George Earp, Jr., shall receive seventy-five per cent, thereof, and the said Felix Trainer twenty-five per cent, thereof.”
It is clear, then, that Felix Trainer was not liable for any. of' the debts or liabilities of the firm of Earp & Randall, whether to outside creditors or owing by either of its partners to the other, those liabilities being all assumed by George Earp, Jr.f who took the whole of the firm propertju So by the agreement of dissolution of the 31st October, 1864, no matter what was the condition of the firm, whether solvent or insolvent, he could in no-event be liable to George Earp, Jr., for anything arising out of or connected with the partnership; of course the assignee of Mr. Earp, whether Mr. Backus, or Mr. Randall his successor, occupy the same position to Mr. Trainer and his estate.
The auditor is, therefore, right, when he says “that by that agreement (of dissolution) Robert E. Randall, Esq., Earp’s. assignee, is bound, and cannot, by reason thereof, maintain his demand against F. Trainer’s estate, for any sum or sums of money paid by him or his principal in compromising the debts of the said firm, or for any sum of money found to be due to Earp, upon the settlement of the partnership accounts of the firm, according to the auditor’s view, this disposes of all that portion of Mr. Randall’s claim that arises out of the settlement of the debts of the firm of George Earp, Jr.,” and we agree entirely with the auditor in his disposition of this part of the ' claim.
So the decision of the auditor in relation to the sum of $6,946.25 (principal and interest,) paid by the assignee of George Earp, Jr., to Samuel J. Randall, out of the estate of George Earp, Jr., in liquidation of the amount found to be due Mr; Randall on the settlement of the partnership accounts of Earp- and Randall, is perfectly correct. Tie held that the assigneecould not present this as a claim against Trainer’s estate, for as-Mr. Earp took the assets, and assumed the liabilities of the firm of Earp & Randall, he agreed to pay this debt, and Trainer’s *471 estate should no more be called upon to assist in paying it than any other debts of Earp & Randall.
The only other claim in relation to an alleged good will, is so well explained by the auditor, that we need only say that we entirely agree with him in his conclusion o.n that subject.
The result is that the appellant has entirely failed in showing any claim against the estate of Felix Trainer, and as his appeal is the only one, it is unnecessary to examine any other part of the auditor’s report.
We agree therefore with the auditor, and decide this case upon the merits and not upon the legal ground taken by the .learned judge, although both agree as to the conclusion.
The appeal is therefore dismissed at the costs of the appellant, and the decree of the Orphans’ Court dismissing the exceptions and confirming the report of the auditor is affirmed.